Argued at Pendleton October 30; reversed December 11, 1934

# GRIFFIN ET AL. *v.* RASMUSSEN ET AL.

(38 P. (2d) 692)

*C. B. Phillips,* of Burns, for appellants.

*Robert M. Duncan* and *Charles W. Ellis,* both of Burns, for respondents.

KELLY, J. Plaintiffs have not appealed, and hence, the question to be determined is whether the decree of forfeiture and the judgment in favor of the state for the benefit of the county school fund are supported by the record.

Plaintiffs executed three chattel mortgages, the foreclosure of which they sought to enjoin. One of these was executed on the 19th day of September, 1929. Defendant R. L. Rasmussen was the mortgagee therein. The mortgage covered a herd of 75 cattle, and secured a note for $2,500 payable one year after date bearing interest at the rate of 10 per cent per annum.

Another of these chattel mortgages was executed on December 2, 1930, by plaintiffs to defendant R. L. Rasmussen. It covered a herd of 95 head of cattle and 51 tons of hay and secured a note for $3,088.19, payable nine months and eighteen days after date with interest at the rate of 10 per cent per annum. This last mentioned mortgage was intended by defendant R. L. Rasmussen and plaintiffs as a renewal and extension of the mortgage first herein mentioned. Both of the mortgages just mentioned were assigned to defendant Sophie Rasmussen by her codefendant.

The third chattel mortgage, the forclosure of which was sought to be enjoined, was executed on the 26th

day of December, 1931, by plaintiffs to defendant Sophie Rasmussen. It covered certain hay, grass and pasture, a saddle and a wagon, and secured the payment of a note for $499.75, payable on demand with interest at the rate of 10 per cent per annum.

Plaintiffs alleged that each of the foregoing mortgages was usurious. The question whether the $3,088.19 note and mortgage were usurious was submitted to a jury and the verdict was to the effect that said note and mortgage were usurious. The court adopted the finding of the jury.

The complaint was filed herein on September 30, 1932. Contemporaneously therewith a temporary injunction was issued restraining defendants from foreclosing said mortgages, except in this suit, and from interfering with plaintiffs' business or going upon plaintiffs' premises.

On the 12th day of November, 1932, a stipulation for the dismissal of this suit was filed. The names of all of the parties hereto appear on said stipulation. On the 16th day of November, 1932, the attorney, theretofore representing plaintiffs, filed his written withdrawal as attorney for the plaintiffs. On the 18th day of November, 1932, pursuant to said stipulation, an order of dismissal was made by the judge of the circuit court in chambers at Canyon City, Oregon, which order was duly filed in Harney county on the 19th day of November, 1932. This order of dismissal was vacated, set aside and held for naught, and this cause and the injunction order herein were reinstated on the 26th day of September, 1933, for the reason that one of the plaintiffs, Francis E. Griffin, had not signed the same in person, and that his co-plaintiff, who had signed the name of Francis E. Griffin to said stipulation, was

not authorized so to do. Permission was then granted plaintiffs to file an amended complaint, and pursuant thereto, on October 13, 1933, plaintiffs filed their amended complaint herein.

From these facts it is obvious that from November 18, 1932, to September 26, 1933, defendants were not affected, or in any way restrained, by the temporary restraining order issued as aforesaid.

Plaintiffs allege that defendant R. L. Rasmussen told the plaintiffs that he could get more than 10 per cent interest on his money, and that he wanted the original note and mortgage, referring to the note and mortgage first herein mentioned, for $2,500 renewed, and that he would renew the same for a bonus of $500, and that the plaintiffs, having no alternative, consented thereto and gave the note and mortgage for $3,088.19.

Defendants allege that at the time and place, and as a consideration for the renewal of the $2,500 note, it was understood between plaintiffs and the defendant R. L. Rasmussen that it would, no doubt, become necessary in the future to make advances to the plaintiffs, as the plaintiffs were financially unable to take care of said cattle, and that, therefore, the defendant, R. L. Rasmussen, would set aside $500, so that the plaintiffs could secure from the defendant R. L. Rasmussen such moneys as would become necessary to preserve the security by feeding the cattle, purchasing hay, etc., and such other expenses as are incurred in the running of cattle; and that an additional $500 was therefore included in said renewal note for $3,088.19.

On the trial, it was conceded that the proposition to execute a note for a larger sum than $2,500 was made by plaintiff Francis E. Griffin. It is true that plaintiff Francis E. Griffin testified that Mr. Rasmussen forced

said plaintiff to suggest it because Rasmussen said he would not renew the mortgage unless plaintiff gave him a better deal and that he, Rasmussen, had a chance to make $500 by buying a ranch over at Drewsey.

Defendant R. L. Rasmussen, when asked what happened at the time of the renewal, testified:

"A. Well, in the fall of 1930, when this $2500 became due, like Mrs. Griffin says, I wanted our money. They said they would get a buyer to take care of the cattle, and—well, first Francis, before that, before he got this buyer, when I told him that I wanted to get our money on that note, he had told me, asked me if there was no chance for them to get the money, if we would possibly renew. So I said that, 'My experience with you has already been enough trouble, so I see you can never finance anything by yourself. The only way I will renew the mortgage will be if you can show me you can buy hay enough to put them through this winter, and then we will advance $500 on the mortgage for me to put up for future expenses thereafter, because I know that you can never put up any money yourself.' 'Oh' he says, 'I will put up a thousand dollars that way.' I says, 'I won't need a thousand dollars, because I wouldn't advance you that much more in addition.' That would be more than I had in the cattle.

"Q. At the time when you suggested to Francis Griffin that there should be $500 added into the mortgage to take care of further expenses, you say he suggested that you should add a thousand to it?

"A. Yes, he said it is all right if I add a thousand to it, if I put up that much more. This I absolutely refused, because I wouldn't go that far under the circumstances. Well, then, it went along for a couple of weeks after that, and in the meantime, I told him to try to sell the cattle this fall, before we drew any other further arrangement on this line."

A deal was then agreed upon for the sale of the cattle to a third party, who gave plaintiffs his check

for $500 as earnest money. Against the advice and over the protest of defendant R. L. Rasmussen plaintiffs refused to consummate that sale and returned the check for $500 to said third party.

In the spring of 1931, circumstances developed, as Mr. Rasmussen says they anticipated, when the $3,088.19 note and mortgage were executed. At least the defendant R. L. Rasmussen deemed it necessary for the cattle to have more feed. The feed was supplied by Rasmussen and the cattle consumed it. In July, 1931, the supply of water upon plaintiffs' premises became insufficient for the needs of said herd. Plaintiff Francis E. Griffin then secured water for the herd by driving the cattle across an intervening ranch to Swan Lake field. Griffin testified that he drove the cattle to this water at night in order to avoid detection on the part of its proprietor who would have objected if he had been apprised of it. The testimony conflicts as to the distance the animals traveled, plaintiff testifying that it was from a mile and a quarter to a mile and a half, and defendant that it was from three and one-half miles to four and one-half miles one way, making the round trip double those distances.

At this juncture, defendant R. L. Rasmussen came upon plaintiffs' premises and deepened the well there until a sufficient flow was obtained to accommodate the herd. Said defendant installed a pump. Later, another well was driven by Rasmussen and he constructed a watering trough on plaintiffs' premises besides hiring his son to pump the water for the cattle. This course on Rasmussen's part is denounced by plaintiffs as aggression, trespass, and ''horning in''.

The expenses defrayed and the services rendered and furnished in caring for and feeding said cattle by defendant R. L. Rasmussen amount to $778.55. It is

not disputed that the cattle had the benefit of these services, feed and care.

Plaintiffs claim that it would have been unnecessary for Mr. Rasmussen to have supplied any of said feed and other material or performed any of said services if plaintiffs had been left to their own resources. As we read the record, Mr. Rasmussen was justified in taking the course he did to preserve the mortgaged property.

■ We are unable to agree with the conclusion that plaintiffs charge of usury has been proved. The attitude of defendants is depicted as one of grasping creditors seeking to deprive their debtor of property of greater value than the amount of the debt, and, yet, we find Mr. Rasmussen advising Mr. Griffin to sell the property when concededly by so doing defendants would receive only the amount due them under the $2,500 mortgage. The amount agreed upon by plaintiffs and said third party as the consideration for said sale was $3,700, or $1,200 more than the mortgage then held by defendants. We think that this does not justify the suggestion that Rasmussen was acting in the role of Shylock, else he would have waited until his claim against plaintiffs had been augmented by the allegedly usurious transaction before advising plaintiffs to sell.

By their terms, the $3,088.19 note and mortgage matured on September 20, 1931. Instead of foreclosing either by suit or by taking possession of said cattle and selling the same, immediately after the maturity of said note, defendants made additional advances for their care and maintenance. This tends to refute the suggestion that defendants were oppressive creditors insisting upon usury; and to corroborate their claim that there was an agreement that they were to make such advances.

There is no evidence in the record that before June 9, 1933, when they took possession of the mortgaged property, defendants threatened to foreclose the $3,088.19 mortgage.

Again, when there was no legal restriction upon their right to take possession of said cattle and sell the same, after the dismissal of this suit on November 18, 1932, defendants made no effort or attempt to take such possession until June 9, 1933, and then only when Francis E. Griffin refused to keep them in his possession and was in the act of delivering them to one Taylor over the protest and objection of defendants. In the meantime, defendants advanced $204.85, for the expense of feeding and caring for said herd.

Both of defendants testify that at that time Mrs. Rasmussen tried to induce or persuade Mr. Griffin to continue in charge of said cattle as before, but he steadfastly refused to do so. It must be remembered that at that time more than the amount of the purported bonus constituting the allegedly usurious taint upon the $3,088.19 note and mortgage had been advanced by defendants for the benefit of, and had been exhausted in caring for and maintaining said cattle. This testimony is not denied.

There are inconsistencies upon the part of defendants. The most serious of these inconsistencies is manifest when we attempt to reconcile the claim, that at the time the $3,088.19 mortgage was executed defendants agreed to set apart $500 to defray the expense of upkeep, care and maintenance of said herd, with the answer of R. L. Rasmussen, upon being asked about the advances for such upkeep, care and maintenance. He was asked:

"Q. Now, is it or is it not a fact, that you endeavored to persuade Griffin to get the money some place else?"

To which he replied:

"A. Well, I tried continuously to get them to raise the money from some one else, and Francis always said in thirty days time they would do so."

It could be said that reference was then being made to advances in excess of $500, but Rasmussen did not expressly so testify.

Another inconsistency appears by reason of the allegation in defendants' answer filed October 2, 1932, to the effect that defendant R. L. Rasmussen assigned all his right, title and interest to defendant Sophie Rasmussen, for a valuable consideration in due course and before maturity and that Sophie Rasmussen ever since has been and is the holder in due course of said papers, and a statement in Mrs. Rasmussen's affidavit of October 3, 1932, "That in reference to the mortgage set out in plaintiffs' complaint for $3,088.19, I wish to state that I have at no time accepted the said mortgage. That said mortgage was made out and delivered to R. L. Rasmussen, but I have at all times declined to accept the said mortgage and have always been willing, and I am now willing and ready to satisfy the said mortgage upon the records", etc.

Defendants' explanation of their course in placing the herd in charge of Taylor and at the same time implacably refusing to permit Griffin to do so, is weak and unsatisfactory.

■ On the other hand, the penalty for usury is so great—in the case at bar it would amount to the forfeiture of $3,278.55, concededly advanced by defendants—that clear and cogent proof thereof is required. We are constrained to hold that the proof herein does not arise to that standard.

■ We are not unaware of the provision of section 57-1203, Oregon Code 1930, that,—

"In the trial of any cause involving the defense of usury" a trial by jury may be had at the discretion of the court in a suit in equity, and that "the verdict of the jury shall have the same force and effect as in law actions", etc. This, however, is not a cause involving the defense of usury. It is a suit wherein usury is alleged as one ground for relief in plaintiffs' statement of their causes of suit. The relief sought is injunctive. We are disinclined to extend the legislative restriction upon the power and prerogative of courts of equity any further than expressed in the language of the statute.

We hold that in this case, neither the trial court nor this court are bound by the verdict; that the charge of usury has not been proved and hence this suit should be and it is hereby remanded to the circuit court with instructions to enter an order of dismissal.

ROSSMAN and BAILEY, JJ., not sitting.